IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| JERRY MCCLURE, ET AL., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| vs. | * | No. 4:10CV01172 SWW |
| | * | |
| DR. LINDA WATSON, ET AL., | * | |
| | * | |
| Defendants. | * | |

**Memorandum Opinion and Order**

Plaintiffs are nineteen African Americans who work in the Maintenance and Operations

Department ("MOD") of the Little Rock School District ("LRSD").  They claim to have been

discriminated against on the basis of race over a long period of time, including within the past

four years of the filing of their complaint.  Defendants filed a motion to dismiss the claims of

eighteen of the plaintiffs for failure to state a claim.  Defendants move for dismissal of some of

the claims of the other plaintiff.  For the reasons stated, the Court finds the motion should

granted in part and denied in part.

I.

Plaintiffs allege that the LRSD operates the MOD in a racially discriminatory manner,

and that members of the LRSD Board of Directors have noted and complained about racial

disparities in the department.  Plaintiffs allege the MOD facility is divided into three separate

sectors: one is for the workers of whom 47 of 50 are white and is located on the facility's east

side; the second sector is for workers of whom 47 of 50 are black and is located on the facility's

west side; and the third sector is in the middle and consists of two parts: (1) the seven-member

management office, which is all white, and several other offices which are mixed but house less

than six people, and (2) the bookkeeping unit which is mostly black.

Plaintiffs allege the white sector is well-maintained and air-conditioned while the black sector is not. Plaintiffs allege that historically the MOD supervision is racial, with black foremen (2) supervising racially identifiable work crews and the white foremen (8) supervising black and white work crews.  Plaintiffs allege generally that white employees receive higher pay, receive benefits denied to black employees, are hired as regular workers as opposed to substitute workers, and have tracks for promotion.  Plaintiffs say the white sector workers get the new equipment, including vehicles, while the black sector workers get used equipment; that job qualifications are subjective resulting in white sector employees more often being non-residents of the LRSD while black workers are residents of the LRSD; and white employees are awarded permanent employment and supplemental pay for travel to and from work.  Plaintiffs allege defendant Kevin Yarberry's employment in 2008 was racially motivated and that while black sector employees generally have greater objective qualifications for the work in MOD, defendants allow on-the-job training for white sector employees so that they can become fully licensed in the trade designations into which they were hired.

With this background of alleged general discriminatory conditions, plaintiffs set forth their individual claims.  Jerry McClure filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in 2009, alleging he was adversely affected by defendants' discriminatory terms and conditions of employment.  He alleges that after he filed the EEOC complaint, he was demoted.  McClure asserts he was denied a promotion of supervisor of MOD in favor of defendant Yarberry, a white person, even though he was more qualified than Yarberry and Yarberry was an outside applicant.  He claims that soon after

Yarberry was hired, McClure's duties and responsibilities were diminished, his job title changed, and his work station given to a friend of Yarberry, who is white and a new hire.  Frederick Williams claims he has worked for LRSD for sixteen years, applied for promotions on numerous occasions, and never was promoted.  He claims that within the last two years, he applied for a team leader position, was denied the same, and alleges he has been subjected to continuing discrimination with respect to pay, promotion and terms and conditions of employment.  Compl. at ¶ 33.  Malachi Harshaw states he was hired by the LRSD in 2000 as a labor driver.  He alleges that in the past few years he has sought promotions and commensurate pay and defendants continue to discriminate against him with respect to pay, promotion and terms and conditions of employment.  Randy Chatman alleges he has continuously sought promotions and equal pay but has been discriminated against in terms of pay, promotion, and terms and conditions of employment.  Roy Daniels makes the same claim as Harshaw and Chatman.  Calvin Carter contends that in 2009 he applied for the position of electrical foreman and did not receive an interview.  He claims the position was posted again in 2010, that he has been interviewed twice, and the position remains unfilled.  Denious Houston claims he was not paid the same as similarly situated white employees for performing the same work.  Bernard Roseby complains he was not grandfathered in as a certified electrician in the same manner was white employees.  Darrell Davis alleges he has continuously sought promotions and commensurate pay for the work assignments he performed.  He claims he applied for the custodian manager position in 2006 but the position was not filled, and when he applied for the grounds crew team leader position in 2007, defendants refused to set a salary commensurate with the job responsibilities.  Kem Austin complains of a racially discriminatory work environment, alleging management is disrespectful

3

and mistreats his work crew in comparison to the white work crews, and that "[a]ll other trade specialists have white crews who are better treated with respect to pay, terms and conditions of employment including work assignment than [his] crew."  Compl. at ¶ 25.

Anthony Oates, who worked as a plumber,  alleges white employees were not required to go through the same training process and were paid more than he, and that white employees, some of whom he names,  were assigned directly into trade specialist positions.  He complains he has continually sought placement as a trade specialist to no avail.  Carolyn Craig alleges she applied for the job of warehouse worker but defendants hired a white female instead.  She also claims she applied for a custodial supervisor position but was rejected despite being qualified and the position remains unfilled.  Demetrius Chism claims he performs the duties of a trade helper but does not have the title and does not receive the pay of a trade helper.  He alleges white employees have job titles and pay that reflect the duties they actually perform, and that even though defendant Yarberry is aware of the disparity, he refuses to take any action.  Brien Harris claims defendants failed to promote him to the position of foreman in 2009 because of his race. He alleges Yarberry hired a white male from outside the MOD to avoid promoting Harris or another black employee, Bob Milsap.  Harris claims defendants added a requirement that the applicant be certified as a mechanic in order to prevent a black person from obtaining the position.  Ira Nicholson complains defendants refused to promote him in 2009 even though he was already performing the duties of the position.  He claims he has been denied pay commensurate to the work he performs.  Bob Milsap complains that when the black foreman of the black mechanic department retired in 2009, he was in line to succeed him.  He claims

defendants posted the position, interviewed Milsap, and then assigned him to work under

Yarberry, leaving the foreman position vacant.  Milsap complains defendants denied him an

opportunity for a promotion.  He claims that when foreman positions in the white departments

become vacant, they are routinely filled with other white persons.

James Cleveland alleges he was denied a promotion to the foreman position in the auto

mechanic department twice after two black foremen retired in 2009.  He claims that rather than

promote one of the qualified black mechanics such as himself, defendants hired a white person

as a third trade specialist within the auto mechanic department.  Cleveland asserts that the reason

defendants gave for not filling the vacancies, too few employees, was pretextual because white

departments within the MOD have foremen even though they have no more employees than the

auto mechanic department.  Dameon Jackson alleges his transfer from civil preventative

maintenance lock crew to the boiler room crew was an illegal demotion, resulting in loss of

status, prestige, and opportunity for advancement.  Gregory Higgins alleges that even though he

is fully qualified as a trade specialist, defendants pay him at a lower rate than white trade

specialists.  He further claims defendants denied him promotions on three separate occasions.

Defendants move to dismiss McClure's Title VII claims and some of his claims brought

pursuant to 42 U.S.C. § 1981 and § 1983.  Defendants move to dismiss all the claims of the other

defendants for failure to state a claim.

## II.

The purpose of a motion to dismiss for failure to state a claim is to test the legal

sufficiency of the complaint.  A complaint must contain "a short and plain statement of the claim

showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  In reviewing the complaint, the Court must "accept as true all of the factual allegations contained in the complaint." *Schaaf v. Residential Funding Corp.,* 517 F.3d 544, 549 (8th Cir.2008) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (internal citations omitted).  A complaint must allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a plaintiff's allegations.  *Id.* at 556.

> '[D]etailed factual allegations' are not required, *Twombly,* 550 U.S., at 555, but the Rule does call for sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,' *id.,* at 570. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556. Two working principles underlie *Twombly.* First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. *Id.,* at 555. Second, determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense. *Id.,* at 556.

*Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1940 (2009).

The Court finds plaintiffs allege sufficient factual matter to state plausible claims of employment discrimination and that it can reasonably be expected that discovery will reveal evidence in support of their allegations.

III.

Defendants assert McClure is the only plaintiff who timely filed a charge of employment discrimination with the EEOC, and the charge he filed did not include a claim of failure to promote or retaliation.  McClure responds that he filed an amended charge alleging retaliation and therefore exhausted his administrative remedies as to retaliation and discrimination in the terms and conditions of employment.  He agrees he did not exhaust the failure-to-promote claim. The other plaintiffs respond that they are not asserting Title VII claims.  The Court finds the motion to dismiss any Title VII claims not included in McClure's original or amended charge should be granted.

IV.

Defendants move to dismiss plaintiffs' claims brought pursuant to 42 U.S.C. § 1983 arguing plaintiffs fail to allege the LRSD had an official policy or a widespread custom of discriminating on the basis of race  with regard to promotions.  They also argue plaintiffs fail to show that a violation of their rights under 42 U.S.C.§ 1981 was caused by a custom or policy. Under *Monell v. Dep't of Social Services,* 436 U.S. 658 (1978), a municipality may be held liable for failure to prevent employee misconduct if municipal officers can be found to be directly responsible for the subordinates' misconduct.  *See Harris v. City of Pagedale,* 821 F.2d 499. 504 (8th Cir. 1987).  A plaintiff must show "deliberate indifference or tacit authorization [by municipal officials] of the offensive acts by [failure] to take remedial steps following notice of a pattern of such acts by . . . subordinates."  *Harris*, 821 F.2d at 504 (internal citation omitted). Plaintiffs allege that members of the LRSD board of directors had knowledge of wide-spread and pervasive discrimination in the MOD and showed deliberate indifference by failing to take

7

corrective measures to protect plaintiffs' constitutional rights.  The Court finds plaintiffs state

sufficient  facts to support their claims under §§ 1981 and 1983.

V.

IT IS THEREFORE ORDERED that defendants' motion to dismiss [docket entry 9]

should be granted with respect to McClure's Title VII claim for failure to promote.  In all other

respects, the motion to dismiss is denied.

DATED this 13th day of June, 2011.


/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE